**REVISED DECEMBER 13, 2001**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 00-20898

_____

The Matter of: MICHAEL ZIBMAN; JAMIE BAILEY ZIBMAN, Debtors

MICHAEL ZIBMAN; JAMIE BAILEY ZIBMAN

                                                    Appellees

                            versus

RODNEY D. TOW, Trustee

                                                    Appellant

_____

Appeal from the United States District Court
For the Southern District of Texas

_____
September 28, 2001

Before JOLLY, WIENER, and SMITH, Circuit Judges.

WIENER, Circuit Judge

        Appellant Rodney Tow, Trustee, appeals the order of the United
States District Court affirming the final order of the United
States Bankruptcy Court for the Southern District of Texas.  The
Bankruptcy court's order denied the Trustee's objection to the
claim of exemption for proceeds from the pre-petition sale of the
homestead filed by Appellees, Debtors Michael and Jamie Zibman,
holding, <u>inter</u> <u>alia</u>, that because the Zibmans' bankruptcy petition

1

was filed during the six months in which proceeds from the sale of a homestead enjoy protection from creditors under Texas law, the proceeds remained permanently exempt from the bankruptcy estate. Because the facts and the law applicable on the date that a petition for bankruptcy is filed determine the exemptions available to a debtor, and because the 6-month time limit is an integral feature of Texas's statutory exemption for proceeds from the sale of a homestead, we reverse the district court's order, render judgment for the Trustee, and remand this matter to the bankruptcy court for continued proceedings consistent herewith.

## I. Facts and Proceedings

The facts in this case are simple and basically uncontested. The Zibmans owned two jewelry stores in Texas, one in San Antonio, and one in Houston. In 1998, they began having financial difficulty, and in October 1998, they closed the San Antonio store. Michael moved to Massachusetts to work in the jewelry business, while Jamie remained in Texas to manage their Houston store. On November 27, 1998, the Zibmans sold their Houston home and placed the proceeds from the sale ($120,665.23) in a general, unsegregated account that already held approximately $8,500.[1] In January 1999, the Zibmans closed the Houston store, and on February 5, 1999, Jamie moved to Massachusetts to join Michael. Four days later, on

---

[1] Between the date of the house sale and the Zibmans' filing for bankruptcy, the Zibmans wrote checks from this account, and deposited other funds into it.

February 9, 1999, the Zibmans filed for bankruptcy protection under Chapter 7, claiming as exempt the full amount of the proceeds from the sale of their Houston homestead. On the same day, the Zibmans moved into a townhome in Massachusetts under a 6-month lease. The Zibmans both testified that they had no intention of reinvesting the proceeds in a Texas homestead within six months following the date of the sale or in the foreseeable future, and they did not, in fact, purchase another Texas homestead within the 6-month period.

In May 1999, just over six months after the Zibmans had sold their home, the Trustee objected to the Zibmans' claimed exemption of the sale proceeds on the alternative grounds that (1) under Texas law, the proceeds from a homestead sale that have not been reinvested in another Texas homestead within six months after the sale cease to be exempt from creditors' claims; and (2) the Zibmans had waived the exemption of the proceeds by abandonment and by commingling the proceeds with other funds. The bankruptcy court and, on appeal, the district court, relied on the "snapshot" rule[2] to allow the exemption as permanent, that is, no longer subject to automatic expiration upon failure to reinvest within six months. The court also held that the debtors had not waived the exemption as of the date the petition was filed either through abandonment or by commingling the sale proceeds with other funds. The Trustee

---

[2] See White v. Stump, 266 U.S. 310, 312 (1924) (explaining that the "state laws existing when the [bankruptcy] petition is filed [are] the measure of the right to exemptions").

timely appealed the district court's order affirming the bankruptcy court.

## II. Analysis

### A. Jurisdiction and Standard of Review

District courts' jurisdiction to hear appeals in bankruptcy cases encompasses final judgments, orders, and decrees, as well as certain interlocutory orders and decrees.[3] Courts of appeals, in turn, have jurisdiction to hear bankruptcy appeals, but the appellate courts' jurisdiction is limited to "all final decisions, judgments, orders, and decrees" of district courts or a bankruptcy appellate panel.[4] An order that grants or denies an exemption is deemed a final order for the purpose of 28 U.S.C. § 158(d).[5] Determination whether an exemption from the bankruptcy estate exists is a question of law, which we review de novo.[6]

### B. Exemption of Proceeds from the Sale of a Homestead under Texas Law

The bankruptcy and district courts determined that the Zibmans' filing of a bankruptcy petition during the 6-month period

---

[3] 28 U.S.C. § 158(a).

[4] 28 U.S.C. § 158(d)

[5] In re England, 975 F.2d 1168, 1172 (5th Cir. 1992).

[6] Id.

4

in which proceeds from the sale of a homestead enjoy protection from creditors under Texas law froze the exemption as it existed on the date of filing. These courts reasoned that, on that one day, the exemption was in existence, and subsequent events — here, the expiration of the balance of the 6-month period without reinvesting the proceeds — could not retouch the snapshot. The Trustee contends that this determination was error because the 6-month limit of the exemption for proceeds is an integral feature of the Texas law "applicable on the date of the filing of the [bankruptcy] petition."[7] Therefore, reasoned the Trustee, this essential element of the exemption must continue in effect even during the pendency of a bankruptcy case. We agree with the Trustee.[8]

Under the Bankruptcy Code, the commencement of a bankruptcy case creates an estate comprising all legal and equitable interests in property (including potentially exempt property) of the debtor as of that date.[9] The debtor may have certain property exempted from the bankruptcy estate by electing to take advantage of either the federal exemption provisions in the Bankruptcy Code or those

---

[7] 11 U.S.C. § 522(b)(2)(A).

[8] Because we conclude that, barring tolling, the exemption for the proceeds expires after six months, regardless of the intervening petition filing, we do not reach the Trustee's additional points of error relating to waiver of the exemption by abandonment of the proceeds or by commingling of the proceeds with other funds.

[9] 11 U.S.C. § 541; Owen v. Owen, 500 U.S. 305, 308 (1991); In re Reed, 184 B.R. 733, 737 (Bankr. W.D. Tex. 1995).

provided under state law.[10]  As to the state-law alternative, the

Bankruptcy Code provides the exemption for

> any property that is exempt under...State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place....[11]

As the Supreme Court noted in Owen v. Owen,[12] "[n]othing in

subsection (b) [of § 522] (or elsewhere in the Code) limits a

State's power to restrict the scope of its exemptions; indeed, it

could theoretically accord no exemptions at all."[13]  Any exemptions

claimed, however, are determined by the facts and the law as they

exist on the date of filing the bankruptcy petition.[14]  This focus

---

[10] 11 U.S.C. § 522(b) ("[A]n individual debtor may exempt from property of the estate the property listed in either paragraph (1) [the list of federal exemptions] or, in the alternative, paragraph (2) [the provision allowing the application of state law].").

[11] 11 U.S.C. § 522(b)(2)(A).

[12] 500 U.S. 305 (1991).

[13] Id. at 308.

[14] See White v. Stump, 266 U.S. 310, 312 (1924) ("[The Bankruptcy Code] makes the state laws existing when the petition is filed the measure of the right to exemptions."); In re Sandoval, 103 F.3d 20, 23 (5th Cir. 1997) (holding that "facts as they existed on the date of the original bankruptcy petition," not on the date of conversion from Chapter 13 to Chapter 7 bankruptcy, applied); In re John Taylor Co., 935 F.2d 75, 78 (5th Cir. 1991) ("Taylor's homestead exemption must...be determined by reference to the law existing in 1979 — the time of the filing of the petitions.").

on the status as of the date of filing is commonly referred to as the "snapshot" approach to determining the extent of the bankruptcy estate and the scope of the exemptions.

When the Zibmans filed their bankruptcy petition on February 9, 1999, they exercised the § 522 option and elected to claim exemptions offered by Texas state law. Now as in February of 1999, Texas law provides a homestead exemption, as follows:

> 41.001. Interests in Land Exempt from Seizure
>
> (a)  A homestead...[is] exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property.
>
> ....
>
> (c) The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale.[15]

As noted above, the Zibmans sold their Texas homestead in late November 1998, and filed for bankruptcy just over three months later, in early February 1999. When, by May 1999, the 6-month statutory protection period had expired without the Zibmans' having reinvested their homestead sale proceeds in a new Texas homestead, the Trustee objected to the exemption of the proceeds. In rejecting the Trustee's objection, the bankruptcy court stated that, "[o]n the petition date, these funds were exempt. Post petition acts or failures to act does [sic] not effect [sic] the

---

[15] Tex. Prop. Code § 41.001.

exempt status."

In reaching its conclusion, the bankruptcy court cited In re Harlan,[16] a 1983 Bankruptcy Court case that also involved the filing of a bankruptcy petition during the 6-month period in which proceeds from the sale of a homestead continued to enjoy protection under the Texas statute. The Harlan court in turn relied on White v. Stump[17] to arrive at its holding that "the debtors' homestead proceeds were exempt on the date that they filed their...petition...because their petition was filed within six months of the date of the sale of their homestead[,]" and that "because the substantive rights of the parties were fixed on the date of the filing of the petition the proceeds must, therefore, be allowed as exempt, regardless of what use the debtors might make of the proceeds after the date of the filing of their petition."[18] As the following analysis will show, White v. Stump introduced the "snapshot" theory, but both courts misapplied the holding of White to this fact pattern. A later Supreme Court case, Myers v. Matley,[19] illustrates the appropriate refinement of White when the state law in question includes a condition on its application.

In Myers v. Matley, the Supreme Court refined White's snapshot

---

[16] 32 B.R. 91 (Bankr. W.D. Tex. 1983).

[17] 266 U.S. 310 (1924).

[18] Harlan, 32 B.R. at 93.

[19] 318 U.S. 622 (1943).

principle, analyzing a slightly more complex Nevada state law situation. As in White, the state law provided that either member of a married couple could file a declaration to create a homestead exemption, and, as in White, the debtors attempted to file the declaration after a petition in bankruptcy was filed against the debtor. The Myers Court did not blindly apply White with a broad brush and deny the debtors' attempt to file the declaration, however. Instead, it reviewed Nevada law and discovered that "the settled law of the State entitles the debtor to his homestead exemption if the selection and recording occurs at any time before actual sale under execution." The Court linked to this the observation that "under the theory of the present [Bankruptcy] Act, ... [t]he trustee is vested not only with the title of the bankrupt but clothed with the right of an execution creditor with a levy on the property which passes into the trustee's custody."[20] From this the Myers Court concluded that, taking all facets of Nevada law into account, the post-petition declaration should be allowed, because state law allowed such declarations after levy, up until the execution sale:

> In conformity to the principle announced in White v. Stump, that the bankrupt's right to a homestead exemption becomes fixed at the date of the filing ... and cannot thereafter be enlarged or altered by anything the bankrupt may do, it remains true that, under the law of Nevada, the right to make and record the

---

[20] Myers, 318 U.S. at 627.

9

> necessary declaration of homestead <u>existed</u> in the bankrupt <u>at the date of filing the petition, as it would have existed in case a levy had been made upon the property</u>.[21]

<u>Myers</u> thus confirms the basic holding from <u>White v. Stump</u> that the law and facts existing on the date of filing the bankruptcy petition determine the existence of available exemptions, but flags the important reminder that it is the <u>entire</u> state law applicable on the filing date that is determinative. Courts cannot apply a juridical airbrush to excise offending images necessarily pictured in the petition-date snapshot.

The bankruptcy and district courts did not apply the <u>entire</u> Texas law that is applicable in the instant case. Instead, their denial of the Trustee's objection to the exemption in the instant case, "freezing" the exemption for the proceeds simply because it was in effect at the date the petition was filed, effectively read the 6-month limitation out of the statute, and transformed an explicitly limited exemption into a permanent one. This transgresses the teaching of <u>Myers</u> that the entire state law applicable on the date of filing must be considered.

In a case virtually identical to this one, the Ninth Circuit rejected the debtor's similar attempt to enlarge the homestead exemption, saying that, "[a]cceptance of the debtor's position would frustrate the objective of the California homestead exemption

---

[21] <u>Id.</u> at 628 (emphasis added).

and the bankruptcy act itself, which <u>limits exemptions to that provided by state or federal law</u>."[22] As observed by the <u>Owen</u> Court, a state may choose not to provide exemptions at all, or it may provide exemptions limited as it sees fit. When a debtor elects to avail himself of the exemptions the state provides, he agrees to take the fat with the lean; he has signed on to the rights (like the post-petition right to file in <u>Myers</u>) but also to the limitations (like the temporal element of the reinvestment feature of California's homestead exemption in <u>Golden</u>) integral in those exemptions as well. In Texas, the 6-month limitation is inextricably intertwined with the exemption the state has chosen to provide for proceeds from the sale of the homestead. As an Oregon bankruptcy court so aptly observed, "This court finds nothing in the Bankruptcy Code that requires or allows it to fragment the state law in this manner to grant a benefit to the debtors they would not have received if they had not filed bankruptcy."[23]

Our decision today conforms with the objective of the Texas's exemption for proceeds from the sale of a homestead. In <u>In re England</u>,[24] we focused on this exemption, reviewing in particular the legislative intent in providing the exemption. We expressly noted

---

[22] <u>In re Golden</u>, 789 F.2d 698, 700 (9th Cir. 1986) (emphasis added).

[23] <u>In re Earnest</u>, 42 B.R. 395, 399 (Bankr. D. Ore. 1984).

[24] 975 F.2d 1168 (5th Cir. 1992).

in England that Texas law originally provided only for an exemption of the homestead (that is, the real property itself), and that the objectives of the exemption were to provide "a secure asylum of which the family cannot be deprived by creditors,"[25] and to "support the public policy of preventing homelessness among Texas residents."[26]   Historically, the absence of an exemption of the proceeds from the voluntary sale or exchange of the homestead resulted in many persons being left homeless when they sold their homestead with the intention of investing the proceeds in another homestead.[27]   In response to this problem, the Texas Legislature passed the proceeds exemption statute.   As we announced in no uncertain terms in England, "[t]he object of the proceeds exemption statute was <u>solely</u> to allow the claimant to invest the proceeds in another homestead, <u>not to protect the proceeds, in and of themselves</u>."[28]

When the Zibmans failed to invest the proceeds from the sale of their Houston homestead in another Texas homestead within the allotted time, the exemption on these proceeds evanesced by operation of law.   Allowing the intervening bankruptcy petition to

---

[25] <u>Id.</u> at 1174 (quoting <u>Herman Iken and Co. v. Olenick</u>, 42 Tex. 195, 198 (1875)).

[26] <u>Id.</u> at 1174.

[27] <u>Id.</u>

[28] <u>Id.</u> at 1174-75 (first emphasis in original; second emphasis added).

improve the Zibmans' pre-petition exemption by expurgating the 6-month clock and thereby freezing the exemption permanently would not only require a fragmented reading of state law, but would contravene the purpose of the exemption, transforming it into a protection of the proceeds, in and of themselves. This we refuse to do.

## III. Conclusion

The Texas statute that provides an exemption for proceeds from the sale of a homestead contains a temporal element that explicitly limits the exemption to six months. When the Zibmans failed to reinvest the proceeds in another Texas homestead within the statutory time period, those proceeds lost their exemption,[29] freeing the Trustee to reach the proceeds as part of the bankruptcy

---

[29] The Zibmans contend that the Trustee is estopped from reaching the proceeds at the end of the 6-month period because he advised the Zibmans at the creditors' meeting not to deplete the proceeds until he could "figure out what to do." This argument might have merit on other facts, but has none here. There is no record evidence that, but for the Trustee's advice, the Zibmans would have used to proceeds to invest in another homestead. On the contrary, the record demonstrates that, by the time the creditors' meeting took place, Michael had already moved to Massachusetts, Jamie had joined him, they had filed the bankruptcy petition, and both had stated that they had no intention of investing the proceeds in a Texas homestead within the 6-month time frame. In fact, Michael Zibman stated at the same meeting that, prior to the meeting, they (the Zibmans) had been "advised not to touch [the proceeds,] not to do anything with [them]," whereupon the Trustee stated, "Well, I am going to let you and your attorney talk about that." These flaccid facts are indeed the classic reed too slender upon which to lean a claim for estoppel.

13

estate.[30]  For the foregoing reasons, we reverse the district court's affirmance of the bankruptcy court's judgment, render judgment for the Trustee, and remand this matter to the bankruptcy court for continued proceedings consistent herewith.

REVERSED, RENDERED, and REMANDED.

---

[30] Although the Zibmans allude in their argument to the possibility that the six months could be tolled during the bankruptcy proceeding, they did not seek such tolling in the bankruptcy court before the balance that remained on the 6-month period at filing eventually ran out.  We therefore do not address that issue except to note that a Texas Court of Appeals has allowed the six months to be tolled during periods of dispute. See Jones v. Maroney, 619 S.W.2d 296 (Tex. Civ. App.-- Houston [1st Dist] 1981).