# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2014

Lyle W. Cayce
Clerk

No. 12-50811

In the Matter of: MARK ALAN FROST,

Debtor

\-------------------------------------------------------------------

MARY K. VIEGELAHN,

Appellee

v.

MARK ALAN FROST,

Appellant

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and DeMOSS and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Under Texas law, a debtor's homestead is permanently exempted from the bankruptcy estate, whereas proceeds from the sale of a homestead are only exempted for six months. Debtor Mark Alan Frost ("Frost") challenges the district court's determination that proceeds from the post-certification sale of an exempted homestead revert to the estate if not reinvested within six months, arguing that once the homestead is permanently exempted from the estate, any proceeds from its sale are also exempt. We affirm.

No. 12-50811

**FACTS AND PROCEEDINGS**

When Frost filed his bankruptcy petition, his homestead in Cibolo, Texas, was exempted from the bankruptcy estate under Texas Property Code section 41.001(a). Subsequently, he sold the property and used some of the funds for non-bankruptcy expenses. Under Texas law, property owners who sell their homesteads must reinvest the proceeds in another homestead within six months. Tex. Prop. Code § 41.001(c) ("The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale."). The Bankruptcy Court determined that, because Frost did not reinvest the proceeds in a new homestead, he had recharacterized the proceeds as nonexempt property; accordingly, the Bankruptcy Court ordered that the proceeds be distributed in part to Frost's creditors and that a small amount of the remaining funds, approximately $18,000, be held in trust for Frost's future use to purchase a new homestead.

The bankruptcy court based its conclusion on this court's opinion in *In re Zibman*, which held that proceeds from the pre-petition sale of a Texas homestead are not permanently immune from bankruptcy creditors. 268 F.3d 298, 305 (5th Cir. 2001). Frost argues that *Zibman* is distinguishable because it concerned homestead proceeds obtained prior to bankruptcy, whereas he sold his homestead after petitioning for bankruptcy, at a time when the homestead had already been declared exempt from the bankruptcy estate. In support, Frost points to the text of 11 U.S.C. § 522(c), which provides: "Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except" as otherwise provided in § 522(c). Frost also points to the general rule that all bankruptcy exemptions are fixed at the time of the

No. 12-50811

bankruptcy petition and do not later lose their exempt status (the "snapshot rule"). *See Zibman*, 268 F.3d at 301.

Frost appealed to the district court, arguing: (i) that *Zibman* is distinguishable because it concerned homestead proceeds obtained prior to bankruptcy, whereas he sold his homestead after petitioning for bankruptcy, at a time when the homestead had already been declared exempt from the bankruptcy estate; (ii) that the plain text of §§ 522(c) & (*l*), together with bankruptcy's "snapshot rule," require that his homestead remain permanently exempted, regardless of whether he subsequently sells the homestead and regardless of whether he reinvests the proceeds; and (iii) that the Supreme Court's decision in *Schwab v. Reilly*, 560 U.S. 770 (2010), requires that his proceeds be protected under federal law, preempting the Texas limitation that proceeds be reinvested within six months. The district court affirmed, concluding that there was no distinction between a pre-petition and post-petition homestead sale and that the six-month reinvestment requirement applied in either instance, notwithstanding the terms of § 522(c). Frost appeals, raising the same argument.

## STANDARD OF REVIEW

We apply the same standard of review as the district court, reviewing the bankruptcy judge's factual findings for clear error and its decisions of law de novo. *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001).

## DISCUSSION

The "snapshot rule" of bankruptcy law holds that all exemptions are determined at the time the bankruptcy petition is filed, and that they do not change due to subsequent events. *Zibman*, 268 F.3d at 301; *see Owen v. Owen*, 500 U.S. 305, 314 n.6 (1991); *White v. Stump*, 266 U.S. 310, 311-13 (1924) ("The

No. 12-50811

[homestead] exemption arises when the declaration is filed, and not before. . . . [T]he point of time which is to separate the old situation from the new in the bankrupt's affairs is the date when the petition is filed. . . . [T]he law discloses a purpose 'to fix the line of cleavage' with special regard to the conditions existing when the petition is filed[.]"); *In re Williamson*, 804 F.2d 1355, 1359 (5th Cir. 1986). Federal and Texas law both provide homestead exemptions, and a debtor may rely on either the federal or state exemption. 11 U.S.C. § 522(c); Tex. Prop. Code § 41.001(a). When claiming an exemption under state law, it is important to remember that "it is the *entire* state law applicable on the filing date that is determinative." *Zibman*, 268 F.3d 298, 304 (5th Cir. 2001).

Frost claimed his exemption under Texas law, which is more generous than the federal exemption because it exempts the homestead itself—regardless of value—from the bankruptcy estate, while federal law limits that exemption to "the debtor's interest, not to exceed $22,975 in value" in his residence. *See* 11 U.S.C. § 522(d)(1). But while the homestead is permanently exempt from the bankruptcy estate, Texas law provides that the proceeds from the sale of a homestead are only exempt for six months after the sale. Tex. Prop. Code § 41.001(c) ("The homestead claimant's proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale."). Because Frost sold his homestead and did not reinvest the proceeds in another homestead within this six month period, the bankruptcy court ruled that the proceeds were no longer exempt from the estate.

Frost argues that this ruling conflicts with federal bankruptcy law. Section 522(c) of the Bankruptcy Code provides: "Unless the case is dismissed, property exempted under this section is not liable *during or after* the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case,"

4

with certain statutory exceptions not asserted here.   11 U.S.C. § 522(c) (emphasis added).

### A.     11 U.S.C. §§ 522(c) & (*l*) and the snapshot rule

Frost's argument that exemptions are fixed as they appear on the date of the bankruptcy filing is foreclosed by this court's decision in *Zibman*, 268 F.3d 298 (5th Cir. 2001).   In *Zibman*, the debtors sold their homestead three months prior to filing bankruptcy and never reinvested the proceeds in a new homestead.   When the six month exemption expired, the trustee challenged the exemption of those proceeds from the estate.   The debtors argued that the snapshot rule "froze the exemption as it existed on the date of filing" and that "post petition acts or failures to act does [sic] not effect [sic] the exempt status." *Id.* at 301, 303.   This court rejected debtors' argument, holding that the six month limit on the exemption was "an integral feature of the Texas law 'applicable on the date of the filing'" and that "this essential element of the exemption must continue in effect even during the pendency of a bankruptcy case."   *Id.* at 301.

Frost's homestead was exempted from the estate—when the rest of his assets were not—by virtue of its character as a homestead.   As in *Zibman*, this "essential element of the exemption must continue in effect even during the pendency of the bankruptcy."   *Id.*   Once Frost sold his homestead, the essential character of the homestead changed from "homestead" to "proceeds," placing it under section 41.001(c)'s six month exemption.[1]   Because he did not reinvest

---

[1] Frost disagrees with our characterization of his property, arguing that his exempted interest is the "equity in his homestead" and that after "the asset was sold, it was the same asset in different form – dollars, not dirt."   This argument is erroneous.   The "property exempted under this section" is the property exempted under Texas law, which clearly differentiates between a "homestead" and "proceeds of a sale of a homestead."   They are different types of property accompanied by different types of protection.   If the form of the

No. 12-50811

those proceeds within that time period, they are removed from the protection of Texas bankruptcy law and no longer exempt from the estate.

Frost argues that *Zibman* is distinguishable because it concerned proceeds obtained prior to filing bankruptcy, whereas he sold his homestead after petitioning for bankruptcy, at a time when the homestead had already been declared exempt from the estate. He argues: (i) that § 522(c) protects "property exempted under this section" both "during and after" the bankruptcy, and (ii) that while the proceeds in *Zibman* were already temporarily exempted at the time of filing, the homestead was a permanent exemption and placed forever outside the estate.

This temporal distinction is insufficient to escape the holding of *Zibman*. The court's insistence that an "essential element of the exemption must continue in effect even during the pendency of the bankruptcy case" indicates that a change in the character of the property that eliminates an element required for the exemption voids the exemption, even if the bankruptcy proceedings have already begun.[2] Under this court's precedent, (i) the sale of the homestead voided the homestead exemption and (ii) the failure to reinvest the proceeds within six months voided the proceeds exemption, regardless of whether the sale occurred pre- or post-petition.

---

homestead—house or cash—was immaterial, the Texas statute would not differentiate between the two.

[2] This position is also embraced by the Ninth Circuit. *See In re Jacobson*, 676 F.3d 1193 (9th Cir. 2012) (holding debtor lost exemption as to proceeds of postpetition sale of homestead property when they were not reinvested in a new homestead within six months pursuant to California law); *see also In re Zavala*, 366 B.R. 643 (Bankr. W.D. Tex. 2007); 3 Norton Bankr. L. & Prac. 3d § 56:9 & n.6 (stating that "[o]nce property has been properly exempted it is no longer property of the estate and its transformation into a nonexempt type of property does not enable the trustee to recover it . . . [but] the exemption may be lost if the proceeds are not reinvested within the limits required by the exemption," while noting that the Ninth Circuit's holding in *Jacobson* "is questionable because the estate's rights in assets should be determined as of the filing of the petition and at that time, the six month period had not expired").

This interpretation of § 522(c) is in accordance with Texas law and the decisions of this court. In *In re England¸* this court noted that "[t]he object of the proceeds exemption statute was *solely* to allow the claimant to invest the proceeds in another homestead, not to protect the proceeds, in and of themselves." 975 F.2d 1168, 1174-75 (5th Cir. 1992). It further stated that it is "[o]nly during the six months following the sale of a homestead when a claimant has not acquired another homestead do claimants have *any protected rights in homestead sale proceeds*." *Id.* at 1174 (emphasis added). Once a new homestead is purchased—even if the six month exemption has not expired—any surplus proceeds from the sale lose their exempt status and can be used to satisfy claims of the estate. *Id.*; *In re Davis*, 170 F.3d 475, 483 n.10 (5th Cir. 1999) (en banc) ("Even during this six month window, if the debtor purchases a new homestead any remaining proceeds from the sale of the first homestead are instantly rendered non-exempt."). This is because once a new homestead has been purchased, the funds become proceeds from the sale of a *former* homestead, which fall outside the protection of the Texas statue. If exempted funds can lose their statutorily-mandated exempt status within the six month window because they are transformed into proceeds of a *former* homestead, then so too can a homestead lose its exemption when it becomes a "former homestead" or "homestead proceeds."

Finally, this interpretation gives effect to both the fact that the homestead exemption is in place at the petition filing date and that the state's law remains equally enforceable with regard to those in bankruptcy and non-bankruptcy. *See Owen*, 500 U.S. at 308 ("Nothing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all."). Reading the statute to exempt property that would not be protected by state law "limits a State's power to restrict the scope of its exemptions." To rule

otherwise would allow a debtor-in-bankruptcy to obtain the liquidity of its homestead at a much earlier date—and without the risk of exposing itself to creditors—than a debtor who had not filed.

Frost claims his position finds support in the First and Eleventh Circuits. In *In re Cunningham*, the First Circuit rejected the estate's argument that the voluntary post-petition sale of the debtor's homestead rendered the homestead proceeds available to satisfy pre-petition debts. 513 F.3d 318, 323-24 (1st Cir. 2008). Citing the plain language of § 522(c), that court held that property exempted on the date of filing is "permanently immuniz[ed]" and withdrawn from the state, "unless the case is dismissed." *Id.* Similarly, in *In re Gamble*, the debtors claimed $10,800 of equity in property as exempt property under the Georgia statute, whose "exemptions are identical to those found in the federal bankruptcy code, except that Georgia has lowered the caps on certain values that the debtor may exempt." 168 F.3d 442, 444 (11th Cir. 1999). The debtors sold the property for a profit of $6,731.22. The Eleventh Circuit ruled the surplus proceeds exempt, holding that "[o]nce the property is removed from the estate through exemption, the debtor may use it as his own." *Id.* But unlike the Texas exemption in this case—which exempts the homestead property itself as an interest in *real* property without a monetary limit[3]—the Massachusetts statute exempts "an estate of homestead to the extent of $300,000,"[4] while the Georgia statute exempts "the debtor's aggregate interest" in its residence, up to $21,500.[5] So while the debtor's interest in those cases remained the same—a monetized interest in equity—Frost's interest in his homestead changed from an unconditionally exempted interest in the real

---

[3] *See England*, 975 F.2d at 172 n.7 (homestead interests exist in real property, and the proceeds from the sale are personal property).

[4] *Cunningham*, 513 F.3d at 321 (quoting Mass. Gen. Laws ch. 188, § 1).

[5] Ga. Code Ann. § 44-13-100(a)(1).

property itself to a conditionally exempted interest in the monetized proceeds from the sale of that property. Once the conditional exemption expired—as it did in *Zibman*—Frost lost his right to withhold the sale proceeds from the estate.

Adopting Frost's argument would require rejecting this court's determination in *Zibman* that § 522(c) does not prevent exempt property from losing its exempt status. If § 522(c) requires strict enforcement of the "snapshot rule" such that property exempted at the moment of filing can never be liable—regardless of restrictions placed on that exemption by state law or a change in the essential character of the property—then the proceeds from the sale in *Zibman* would have been exempted indefinitely, despite the six month limitation on that exception. Frost's reading of the statute is in conflict with *Zibman* and cannot be accepted.

### B.    *Schwab v. Reilly*

Even if *Zibman* were not determinative, Frost's argument that *Schwab v. Reilly* requires the conclusion that §§ 522(c) & (*l*) protect his monetary interest in the homestead—and thereby preempts Texas's limitation on exempting his property[6]—is without merit. 560 U.S. 770 (2010). In *Schwab*, the debtor ("Reilly") claimed exemptions on certain assets under §§ 522(b) &

---

[6] *See, e.g.*, *In re Cunningham*, 513 F.3d 318 (1st Cir. 2008) (holding that the proceeds from the post-petition sale of the debtor's homestead retained the exempt status of the home, and that Massachusetts' contrary provision was preempted); *In re Weinstein*, 164 F.3d 677 (1st Cir. 1999) (holding the Bankruptcy Code preempted the Massachusetts Homestead Act's exceptions for preexisting liens and prior contracted debts); *cf. In re Davis*, 170 F.3d 475 (Fifth Circuit held that the Bankruptcy Code's exceptions to the homestead exemption did not impliedly preempt Texas law and subject the debtor's homestead to turnover and sale by the estate).

(d).[7] Reilly listed the exemptions on the Schedule C form and claimed the statutory maximum value on those assets. Schwab did not object. When an appraisal of the listed assets revealed that they were worth more than the statutory maximum exemption, Schwab moved to auction off the equipment to satisfy the obligations of the estate. Reilly argued that the property claimed as exempt on Schedule C was the asset itself—not the statutorily mandated maximum value of the exemption—and that by failing to object Schwab had waived its right to challenge that exemption. Schwab argued that Schedule C exempted only the value assigned to a debtor's *interest* in the property, not the entire value of the asset itself. The Supreme Court ruled for Schwab, stating that the exemption applied to the "debtor's 'interest'—up to a specified dollar amount—in the assets described in the category, *not* [to] the assets themselves." *Id.* at 782.

Frost argues that the *Schwab* case "focuses on the 'exempt is exempt' language of § 522(*l*) by frequently referring to Schedule C valuations as authority for fixing the value of an exemption without qualifying reference to state or federal exemptions." Because *Schwab* holds that the dollar value listed on Schedule C functioned to define the rights of the debtor, "then it must also (favorably or unfavorably) define the rights of her creditors." As applied to the facts in this case, Frost argues that because he "claimed as exempt the

---

[7] 11 U.S.C. §§ 522(d)(5)-(6) provide:

> The following property maybe be exempted under subsection (b)(2) of this section:
>
> * * *
>
> (5)   The debtor's aggregate interest in any property, not to exceed in value $1,225 plus up to $11,500 of any unused amount of the exemption provided under paragraph (1) of this subsection.
>
> (6)   The debtor's aggregate interest, not to exceed $2,300 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.

full amount of equity in his homestead – that equity was exempt as of the filing and under the logic in *Schwab* cannot become 'unexempt' be it 'dirt or dollars'[.]"

Frost's reliance on *Schwab* is misplaced. The issue is not that *Schwab* did not distinguish between federal or state exemptions—there was no state exemption in that case—but rather that the "property exempted" under the statute was fundamentally different in nature. In *Schwab*, the federal bankruptcy exemption allowed a debtor to claim an interest in the property up to a certain dollar amount. Because the "property exempted" in that case was a monetary interest in a certain category of property—"not [in] the assets themselves"—it makes sense that the debtor's interest would be limited to the value of his claimed exemption and bound by its Schedule C representations. But the property in this case—*i.e.*, the "property exempted under this section"—is exempted as an interest in the *real property* itself, with no limitation on its value. *See England*, 975 F.2d at 1172 n.7 (homestead interests exist in real property, and the proceeds from the sale are personal property). The debtor in *Schwab* was entitled to an exemption in the amount listed in Schedule C because the exemptions in § 522(d) are defined monetarily. By contrast, the value of Frost's homestead is immaterial to whether or not he is entitled to an exemption. More importantly, it is the land itself—not its monetary value—that is protected under Texas law and "exempted under this section."[8] The rationale of *Schwab* simply does not apply to this case.

## CONCLUSION

For the reasons stated, we AFFIRM the decision of the district court.

---

[8] This also distinguishes this case from *Cunningham*, 513 F.3d 318, and *Gamble*, 168 F.3d 442, discussed *supra* section A.