# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20641

United States Court of Appeals
Fifth Circuit

**FILED**
July 19, 2017

Lyle W. Cayce
Clerk

In the Matter of: GREGORY D. HAWK; MARCIE H. HAWK,

Debtors.

------------------------------------------------------------------------------

GREGORY D. HAWK,

Appellant,

v.

EVA S. ENGELHART, Chapter 7 Trustee,

Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and WIENER and PRADO, Circuit Judges.
EDWARD C. PRADO, Circuit Judge:

After filing for Chapter 7 bankruptcy, Gregory and Marcie Hawk claimed an exemption for funds held in an individual retirement account ("IRA"). The Hawks sought to exempt the funds from the bankruptcy estate because tax-exempt or tax-deferred assets held in a qualifying retirement account are generally exempt from creditors' claims under Texas law. However, the Hawks subsequently withdrew the funds from the IRA and did not roll them over into

No. 16-20641

another IRA. Because Texas law provides that funds withdrawn from a retirement account remain exempt only if rolled over into another retirement account within sixty days, the bankruptcy court held that the funds had lost their exempt status and ordered that the Hawks turn over the funds to the Trustee, Eva Engelhart. The district court upheld the bankruptcy court's decision on appeal. We AFFIRM.

## I. BACKGROUND

On December 15, 2013, the Hawks filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. Approximately one month later, the Hawks filed their schedules of assets, which claimed an exemption for funds held in an IRA managed by NFP Securities, Inc. The Hawks claimed that the IRA funds were exempt from creditors' claims under Texas Property Code § 42.0021 and were therefore excluded from the property of the bankruptcy estate under 11 U.S.C. § 522(b). The meeting of creditors was held on March 28, 2014, giving the parties in interest until April 28, 2014, to object to the Hawks' claimed exemptions. *See* Fed. R. Bankr. P. 4003(b)(1). No party in interest objected to the IRA exemption during that time. On April 3, 2014, the Trustee filed a report declaring that the estate had no assets available for distribution to the Hawks' creditors and proposing to abandon all nonexempt assets. In May 2014, however, one of the Hawks' creditors, Res-TX One, timely filed an adversary proceeding objecting to the Hawks' discharge.

Meanwhile, between December 11, 2013, and July 14, 2014, the Hawks withdrew all of the funds from the IRA and used most of those funds to pay for living and other expenses. The funds were never rolled over into another retirement account. When Res-TX One deposed Mr. Hawk in November 2014, Mr. Hawk stated that approximately $30,000 of the liquidated IRA funds remained in his possession and that the funds were being held "in a shoebox." The Trustee first learned about the liquidated IRA funds from Mr. Hawk's

2

No. 16-20641

deposition and subsequently demanded that the Hawks give the funds to the estate. After the Hawks refused to do so, the Trustee filed a motion with the bankruptcy court seeking to compel the Hawks to turn over the funds.

The bankruptcy court held an evidentiary hearing and then ordered the Hawks to turn over the funds that were withdrawn from the IRA ($133,434.64 in total). The bankruptcy court concluded that the funds "lost their exempt status" under Texas law because the Hawks "did not roll them over to another individual retirement account within 60 days." The Hawks appealed to the district court, which affirmed the bankruptcy court's decision. This appeal followed.

## II. STANDARD OF REVIEW

As a "second review court," "[o]ur review is properly focused on the actions of the bankruptcy court." *In re Age Ref., Inc.*, 801 F.3d 530, 538 (5th Cir. 2015) (quoting *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 796 (5th Cir. 1997)). "We apply the same standard of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Pratt*, 524 F.3d 580, 584 (5th Cir. 2008). "Determination whether an exemption from the bankruptcy estate exists is a question of law, which we review *de novo*." *In re Zibman*, 268 F.3d 298, 301 (5th Cir. 2001). "Although we may 'benefit from the district court's analysis of the issues presented, the amount of persuasive weight, if any, to be accorded the district court's conclusions is entirely subject to our discretion.'" *In re Age Ref.*, 801 F.3d at 538 (quoting *In re CPDC, Inc.*, 337 F.3d 436, 441 (5th Cir. 2003)).

## III. DISCUSSION

Under 11 U.S.C. § 541(a), the commencement of a bankruptcy case—whether under Chapter 7 or Chapter 13 of the Bankruptcy Code—creates a bankruptcy estate comprising, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." The

No. 16-20641

debtor may then remove certain types of property from the estate by electing to take advantage of either the exemptions described in federal law or those described in state law. 11 U.S.C. § 522(b). To claim these exemptions, the debtor must file a list of property claimed as exempt on the schedule of assets. 11 U.S.C. § 522(*l*); Fed. R. Bankr. P. 4003(a). A party in interest may then "file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors . . . or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Fed. R. Bankr. P. 4003(b)(1). "Unless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(*l*). "Anything properly exempted passes through bankruptcy; the rest goes to the creditors." *Payne v. Wood*, 775 F.2d 202, 204 (7th Cir. 1985).

This Court has not previously addressed whether a Texas debtor is entitled to an exemption when he or she withdraws funds from a retirement account and does not deposit the funds into another retirement account within sixty days. However, the parties agree that this Court's case law regarding Texas homesteads is instructive. Indeed, there are clear parallels between the Texas statutes governing retirement accounts and those governing homesteads. Texas Property Code § 42.0021(a) states that "a person's right to the assets held in . . . an individual retirement account . . . is exempt from attachment, execution, and seizure for the satisfaction of debts to the extent the . . . account is exempt from federal income tax, or to the extent federal income tax on the person's interest is deferred until actual payment of benefits to the person." Section 42.0021(c) then provides that amounts distributed from an exempt retirement account "are not subject to seizure for a creditor's claim for 60 days after the date of distribution if the amounts qualify as a nontaxable rollover contribution." Similarly, Texas Property Code § 41.001(a) indicates that a homestead is "exempt from seizure for the claims of creditors except for

encumbrances properly fixed on homestead property." Section 41.001(c) goes on to explain that the "proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale."

The Hawks make two primary arguments on appeal. First, they contend that the lower courts improperly applied the so-called "snapshot rule," which dictates that exemptions must be determined based on the state law in effect when the petition is filed. Second, the Hawks seek to distinguish our previous decision in *In re Frost*, 744 F.3d 384, 387 (5th Cir. 2014), which held that the proceeds of a homestead sale were not exempt where a debtor sold his homestead after filing for bankruptcy and did not reinvest the proceeds in another homestead within six months. The Hawks argue that *Frost*'s holding applies only in Chapter 13 bankruptcy cases, not in Chapter 7 proceedings like the case at bar.

## A.　The Snapshot Rule

According to the Hawks' interpretation of the snapshot rule, the property of the estate is permanently fixed "based upon the facts and applicable exemption law that existed on the petition date." Alternatively, the Hawks argue that the facts and law are permanently fixed when the time for making objections passes. In support, they point to 11 U.S.C. § 522(c), which states that, as a general rule, "property exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case." The Hawks note that they claimed an exemption for the IRA funds and that no party in interest objected to the exemption within thirty days after the meeting of creditors. Thus, they contend that the snapshot rule and § 522(c) prohibited the bankruptcy court from later determining that the funds were no longer exempt.

In *White v. Stump*, a debtor filed for bankruptcy, and his wife later sought a homestead exemption for the land where the debtor and his family

resided. 266 U.S. 310, 310–11 (1924). The Supreme Court noted that "[t]he laws of the state of Idaho, where the land is situate, provide for a homestead exemption, but only where a declaration that the land is both occupied and claimed as a homestead is made and filed." *Id.* at 311. Until the landowner filed such a declaration, state law provided that "the land is subject to execution and attachment like other land; and where a levy is effected while the land is in that condition the subsequent making and filing of a declaration neither avoids the levy nor prevents a sale under it." *Id.* The Supreme Court went on to explain that "the state laws existing when the petition is filed [are] the measure of the right to exemptions." *Id.* at 312. Moreover, the date of filing is the point at which "the status and rights of the bankrupt, the creditors and the trustee . . . are fixed." *Id.* at 313. Because the land "was subject to levy and sale" under state law when the debtor filed his bankruptcy petition, the Supreme Court held that he was not entitled to a homestead exemption. *Id.* at 314. This approach of looking to the state law in effect at the time of filing came to be known as the snapshot rule. *See In re Zibman*, 268 F.3d at 303.

Two decades later, the Supreme Court expanded on the snapshot rule in *Myers v. Matley*, 318 U.S. 622, 628 (1943). In that case, a debtor consented to an involuntary bankruptcy petition filed against him. *Id.* at 623. A month later, the debtor's wife filed a declaration with a Nevada county recorder claiming a tract of land listed in the debtor's bankruptcy schedules as a homestead and then filed a petition with the bankruptcy court claiming the land as exempt. *Id.* at 623–24. The Supreme Court first characterized *White* as holding that because "the claim of exemption was not perfected until after the petition was filed, it was ineffective as against the trustee, as it would have been against a creditor then having a levy on the property." *Id.* at 626. In contrast to the state law applicable in *White*, however, Nevada law provided that a debtor was entitled to an exemption so long as a homestead declaration was filed "at any

6

time before actual sale under execution." *Id.* at 626–27. The Supreme Court explained that "under the law of Nevada, the *right* to make and record the necessary declaration of homestead existed in the bankrupt at the date of filing the petition, as it would have existed in case a levy had been made upon the property." *Id.* at 628 (emphasis added). "The assertion of that right before actual sale in accordance with State law did not change the relative status of the claimant and the trustee subsequent to the filing of the petition." *Id.* Thus, the Supreme Court concluded that the debtor's spouse was entitled to the homestead exemption. *Id.*

In recent years, the Fifth Circuit has been guided by *Myers* and *White* in assessing the applicability of Texas's homestead proceeds exemption. *See In re Zibman*, 268 F.3d at 303–04. In *Zibman*, the debtors sold their Texas homestead just over two months before filing for Chapter 7 bankruptcy and did not reinvest the proceeds in another homestead within six months of the sale. *Id.* at 300–01. We observed that under *Myers* and *White*, "the law and facts existing on the date of filing the bankruptcy petition determine the existence of available exemptions, but . . . it is the *entire* state law applicable on the filing date that is determinative." *Id.* at 304. Although the bankruptcy petition was filed before the six-month exemption period had ended, "'freezing' the exemption for the proceeds simply because it was in effect at the date the petition was filed, [would] effectively read the 6-month limitation out of the statute, and transform[] an explicitly limited exemption into a permanent one." *Id.* Furthermore, the legislative intent of "the proceeds exemption statute was *solely* to allow the claimant to invest the proceeds in another homestead, *not to protect the proceeds, in and of themselves.*" *Id.* at 305 (quoting *In re England*, 975 F.2d 1168, 1174–75 (5th Cir. 1992)). Accordingly, we held that when the debtors "failed to reinvest the proceeds in another Texas homestead within the

statutory time period, those proceeds lost their exemption, freeing the Trustee to reach the proceeds as part of the bankruptcy estate." *Id.* (footnote omitted).

The principles articulated in *Zibman* also apply when a homestead is sold during the pendency of bankruptcy proceedings. *See In re Frost*, 744 F.3d at 387. In *Frost*, the debtor sold his Texas homestead after filing for Chapter 13 bankruptcy, but because he failed to reinvest the proceeds in another homestead within six months of the sale, we held that the proceeds were "removed from the protection of Texas bankruptcy law and no longer exempt from the estate." *Id.* at 385, 387. In reaching this conclusion, we addressed many of the same arguments the Hawks raise in the present case. Frost argued that *Zibman* was "distinguishable because it concerned proceeds obtained prior to filing bankruptcy, whereas he sold his homestead after petitioning for bankruptcy, at a time when the homestead had already been declared exempt from the estate." *Id.* at 387. Frost pointed out that § 522(c) provides that "property exempted under this section is not liable *during or after* the case for any debt of the debtor." *Id.* at 387 (quoting 11 U.S.C. § 522(c)). He also suggested "that all bankruptcy exemptions are fixed at the time of the bankruptcy petition and do not later lose their exempt status." *Id.* at 386. Thus, Frost argued that "while the proceeds in *Zibman* were already temporarily exempted at the time of filing, the homestead was a permanent exemption and placed forever outside the estate." *Id.* at 388.

Responding to Frost's arguments, we emphasized that an "essential element of the exemption must continue in effect even during the pendency of the bankruptcy case." *Id.* (quoting *In re Zibman*, 268 F.3d at 301). Therefore, "a change in the character of the property that eliminates an element required for the exemption voids the exemption, even if the bankruptcy proceedings have already begun." *Id.* We went on to explain:

> Adopting Frost's argument would require rejecting this court's determination in *Zibman* that § 522(c) does not prevent exempt property from losing its exempt status. If § 522(c) requires strict enforcement of the "snapshot rule" such that property exempted at the moment of filing can never be liable—regardless of restrictions placed on that exemption by state law or a change in the essential character of the property—then the proceeds from the sale in *Zibman* would have been exempted indefinitely, despite the six month limitation on that exception.

*Id.* at 389. When Frost sold his homestead, his "interest in his homestead changed from an unconditionally exempted interest in the real property itself to a conditionally exempted interest in the monetized proceeds from the sale of that property." *Id.* Consequently, we concluded that "[o]nce the conditional exemption expired . . . Frost lost his right to withhold the sale proceeds from the estate." *Id.*

Similarly, when the Hawks withdrew funds from the IRA, their interest in those funds changed from an unconditionally exempted interest in the amounts held in the retirement account to a conditionally exempted interest in the amounts distributed from the retirement account. *See* Tex. Prop. Code § 42.0021(a), (c). "[I]t is the *entire* state law applicable on the filing date that is determinative," and "[c]ourts cannot apply a juridical airbrush to excise offending images necessarily pictured in the petition-date snapshot." *In re Zibman*, 268 F.3d at 304. Texas's requirement that funds be rolled over into another retirement account within sixty days of distribution "is inextricably intertwined with the exemption the state has chosen to provide." *See id.* Thus, when the Hawks failed to deposit the funds into another retirement account within sixty days of withdrawal, the conditional exemption expired, and the Hawks lost their right to withhold the funds from the estate. *See* § 42.0021(c).

Despite *Zibman* and *Frost*, the Hawks argue that once the time for objections passed, the exemption was automatically allowed, and the exempted

property was forever removed from the property of the estate. As noted above, 11 U.S.C. § 522(*l*) provides that "[u]nless a party in interest objects, the property claimed as exempt on [the schedules] is exempt." Moreover, Federal Rule of Bankruptcy Procedure 4003(b) indicates that parties in interest must generally object to claimed exemptions within thirty days after the creditors' meeting. In *Taylor v. Freeland & Kronz*, the Supreme Court held that under § 522(*l*) and Rule 4003(b), a party in interest cannot "contest the validity of an exemption after the 30-day period," even if "the debtor had no colorable basis for claiming the exemption." 503 U.S. 638, 639, 643–44 (1992). Although the Hawks do not cite *Taylor* directly, they suggest that the Trustee was unable to contest the exempt status of the IRA funds after the 30-day period ended.

Nonetheless, the Supreme Court's decision in *Taylor* is not fatal to the Trustee's position in the present case. In *Frost*, we stressed that it was "the land itself—not its monetary value—that [was] protected under Texas law and 'exempted under [§ 522].'" 744 F.3d at 391 (quoting 11 U.S.C. § 522(c)). In other words, "Frost's homestead was exempted from the estate . . . by virtue of its character as a homestead." *Id.* at 387. But when Frost sold the homestead, the property's "essential character . . . changed from 'homestead' to 'proceeds,'" permitting the trustee to "challenge[] the exemption of those proceeds from the estate." *Id.* Likewise, when the Hawks claimed an exemption and no party in interest objected, the funds held in the IRA were exempted because of their essential character as "assets held in . . . an individual retirement account." *See* Tex. Prop. Code § 42.0021(a). The funds would have stayed exempt during the bankruptcy proceeding so long as they remained in the IRA and continued to comply with Section 42.0021(a)'s requirements. However, when the Hawks withdrew the funds, the essential character of the property changed from assets held in a retirement account to "[a]mounts distributed from a

No. 16-20641

[retirement] account," *see* § 42.0021(c), which enabled the Trustee to contest the exemption of the distributed amounts.[1]

## B.    Chapter 7 and Chapter 13 Cases

The Hawks also contend that *Frost* is distinguishable because it was a Chapter 13 case, whereas the instant case was filed under Chapter 7. As an initial matter, this argument is unconvincing given that *Frost* relied heavily on principles established in *Zibman*, a Chapter 7 case. Furthermore, *Frost* does not limit its holding to Chapter 13 cases and does not even mention that the case was brought under Chapter 13. *See In re Frost*, 744 F.3d at 387; *Lowe v. DeBerry*, No: 5:15-cv-1135, slip op. at 17 (W.D. Tex. Mar. 10, 2017) ("[N]othing in *Frost* itself limits its holding to Chapter 13."). "The only section of the Bankruptcy Code examined by the *Frost* court is Section 522, which applies to both Chapter 7 and Chapter 13 cases." *DeBerry*, slip op. at 17. Nevertheless, the Hawks insist that *Frost* does not apply in the instant case because of important differences between Chapter 7 and Chapter 13 proceedings.

"Chapter 7 allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets. When a debtor files a Chapter 7 petition, his assets, with specified exemptions, are immediately transferred to a bankruptcy estate." *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015). The trustee then sells the property of the estate and distributes the proceeds to the debtor's creditors. 11 U.S.C. §§ 704(a)(1), 726. The Hawks argue that when exemptions are allowed in a Chapter 7 case, the exempted property is permanently "removed from the property of the estate," and "the debtor can later sell them and use the proceeds as he or she will." *See In re D'Avila*, 498 B.R. 150, 159 (Bankr. W.D. Tex. 2013).

---

[1] The Hawks also argue that the funds were permanently exempted because the Trustee first objected to the exemption after filing a report declaring that there were no assets for distribution. However, the Hawks have not cited any authority in support of this position.

No. 16-20641

Chapter 13 is a "wholly voluntary alternative to Chapter 7." *Harris*, 135 S. Ct. at 1835. In a Chapter 13 case, a debtor is allowed "to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three- to five-year period." *Id.*; *see* 11 U.S.C. §§ 1321, 1322, 1325. "[T]he Chapter 13 estate from which creditors may be paid includes both the debtor's property at the time of his bankruptcy petition, and any wages and property acquired after filing." *Harris*, 135 S. Ct. at 1835; *see* 11 U.S.C. § 1306(a). "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). The Hawks argue that "unlike the operation of property exemptions in Chapter 7," exempted property does not actually leave the bankruptcy estate during Chapter 13 proceedings "because no property vests with the debtor prior to confirmation."

In support, the Hawks point to one case in which a bankruptcy court held that *Frost* does not apply to Chapter 7 cases. *See In re Montemayor*, 547 B.R. 684, 713 (Bankr. S.D. Tex. 2016). In *Montemayor*, the bankruptcy court reasoned that the homestead in *Frost* "never truly left the chapter 13 estate, because it was exempt but would not vest in the debtor until the resolution of either an order granting plan confirmation or . . . completion of all plan payments under the plan and the entry of an order of discharge."[2] *Id.* at 710 (emphasis omitted). The bankruptcy court noted that "there is no similar provision applicable in a chapter 7 bankruptcy." *Id.* at 712. Accordingly, the court concluded that "*Frost*'s core holding is based on factually distinguishable underpinnings and, as such, is distinguishable in a chapter 7 where, such as here, the debtor sells a properly exempted homestead post-petition." *Id.* at 713.

---

[2] Though acknowledging that this rationale was "not specifically mentioned by the Fifth Circuit" in *Frost*, the bankruptcy court viewed this as the Fifth Circuit's "implied analysis." *Montemayor*, 547 B.R. at 709.

No. 16-20641

Yet other district and bankruptcy courts have held that *Frost* is applicable in Chapter 7 cases. *DeBerry*, slip op. at 19; *In re Smith*, 514 B.R. 838, 850 (Bankr. S.D. Tex. 2014). For example, in *Smith*, the debtor filed for Chapter 7 bankruptcy and claimed a homestead exemption under Texas law, without objection from the trustee or any creditors. 514 B.R. at 841. After the bankruptcy court issued an order discharging the debtor, the debtor sold his homestead but did not reinvest the proceeds in another homestead within six months of the sale. *Id.* The bankruptcy court held that the trustee was entitled to recover the proceeds from the debtor under *Frost* and *Zibman*, noting that "it is not the exempt status itself that carries through the entirety of a case, but rather the law governing the exemption."[3] *Id.* at 848, 850.

Likewise, in the instant case, the snapshot rule dictates that the law governing the IRA exemption (Texas Property Code § 42.0021) is applicable throughout the entirety of the case. Thus, the IRA funds were not forever removed from the property of the estate when the exemption was allowed. "When a debtor elects to avail himself of the exemptions the state provides, he agrees to take the fat with the lean; he has signed on to the rights . . . but also to the limitations . . . integral in those exemptions as well." *In re Zibman*, 268 F.3d at 304. Texas law clearly placed a limitation on the Hawks' IRA exemption during the pendency of the bankruptcy proceeding: if the Hawks elected to receive a distribution from the IRA, they needed to reinvest those funds in another retirement account within sixty days or else lose their exemption. *See* Tex. Prop. Code § 42.0021(a), (c). Allowing a Chapter 7 debtor to retain distributions from an IRA that have not been rolled over into another account

---

[3] The Hawks argue that the bankruptcy court erred by "retroactively applying" *Smith* to the instant case, even though the Hawks withdrew funds from the IRA before *Smith* was decided. But because we review legal conclusions de novo, any error by the bankruptcy court on this point is irrelevant. We simply view *Smith* as a persuasive interpretation of *Frost*.

within sixty days would directly contradict § 42.0021(c) and "produce inequitable results, particularly when Chapter 13 debtors in [similar] situations are not permitted to retain such proceeds. It would effectively read the [sixty day] limitation out of the statute in Chapter 7 cases." *DeBerry*, slip op. at 19.

The Hawks also note that pursuant to 11 U.S.C. § 1306(a)(1), the estate in a Chapter 13 case includes "all property of the kind specified in . . . section [541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted." The Hawks contend that this Court's decision in *Frost* effectively brought "proceeds that became nonexempt after the expiration of the time-limited exemption back into the estate," which was permissible in a Chapter 13 case because the proceeds supposedly constituted property that the debtor acquired after the commencement of the case. Because Chapter 7 does not contain an analogous provision, the Hawks reason that previously exempted property that becomes nonexempt under state law after commencement of a Chapter 7 case remains excluded from the bankruptcy estate.

This argument might make sense if the proceeds from the homestead sale in *Frost* constituted property that the debtor *acquired* after the commencement of the case, but *Frost* did not characterize the debtor as acquiring a new property interest when he sold his homestead.[4] Rather, the opinion stated that Frost's existing "interest in his homestead *changed* from an unconditionally exempted interest in the real property itself to a conditionally exempted interest in the monetized proceeds from the sale of that property." 744 F.3d at 389 (emphasis added). After the conditional exemption

---

[4] In addition, *Frost* did not mention § 1306 and gave no indication that the Court's reasoning was based on this attribute of Chapter 13 cases.

expired, "Frost lost his right to withhold the sale proceeds from the estate," not because the proceeds were a wholly new property interest that Frost acquired after commencement of the case, but because Frost's interest in the property had changed and no longer met the conditions of the exemption. *Id.*

In the case at bar, the Hawks held a property interest in the IRA funds when their bankruptcy petition was filed. Although the essential character of the funds changed over time, the Hawks did not acquire new property within the meaning of § 1306(a)(1) when they withdrew those funds from the IRA. On the contrary, their existing interest simply changed from an unconditionally exempted interest in the funds held in the IRA to a conditionally exempted interest in the funds distributed from the IRA. Texas law dictated that the Hawks needed to roll over the distributed funds into another retirement account within sixty days in order to maintain the funds' exempt status. But the Hawks did not do so. Accordingly, we hold that the bankruptcy court did not err in concluding that the Hawks could no longer claim the funds as exempt under Texas law.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the bankruptcy court's order requiring the Hawks to turn over the funds to the Trustee.