# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

—————

No. 16-20641

—————

United States Court of Appeals
Fifth Circuit

**FILED**

September 5, 2017

Lyle W. Cayce
Clerk

In the Matter of: GREGORY D. HAWK; MARCIE H. HAWK,

> Debtors.

-----------------------------------------------------------------------------

GREGORY D. HAWK,

> Appellant,

v.

EVA S. ENGELHART, Chapter 7 Trustee,

> Appellee.

—————————

Appeal from the United States District Court
for the Southern District of Texas

—————————

ON PETITION FOR REHEARING

Before STEWART, Chief Judge, and WIENER and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Gregory and Marcie Hawk's petition for panel rehearing is GRANTED, and the opinion previously filed in this case is withdrawn. This opinion is substituted therefor. The Hawks' petition for rehearing en banc is DENIED.

After filing for Chapter 7 bankruptcy, the Hawks claimed an exemption for funds held in an individual retirement account ("IRA"). They sought to

exempt the funds from the bankruptcy estate because tax-exempt or tax-deferred assets held in a qualifying retirement account are generally exempt from creditors' claims under Texas law. However, over the course of several months, the Hawks withdrew the funds from the IRA. Texas law provides that amounts distributed from a retirement account remain exempt only if rolled over into another retirement account within sixty days. After withdrawing the funds from the IRA, the Hawks did not roll them over into another qualifying account. Thus, the bankruptcy court held that the funds had lost their exempt status and ordered that the Hawks turn over the funds to the Trustee, Eva Engelhart. The district court upheld the bankruptcy court's decision on appeal. We REVERSE and REMAND.

## I. BACKGROUND

On December 15, 2013, the Hawks filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. Approximately one month later, the Hawks filed their schedule of assets, which claimed an exemption for funds held in an IRA managed by NFP Securities, Inc. The Hawks claimed that the IRA funds were exempt from creditors' claims under Texas Property Code § 42.0021 and were therefore excluded from the property of the bankruptcy estate under 11 U.S.C. § 522(b). The meeting of creditors was held on March 28, 2014, giving the parties in interest until April 28, 2014, to object to the Hawks' claimed exemptions. *See* FED. R. BANKR. P. 4003(b)(1). No party in interest objected to the IRA exemption during that time. On April 3, 2014, the Trustee filed a report declaring the estate had no assets available for distribution to the Hawks' creditors and proposing to abandon all nonexempt assets. In May 2014, however, Res-TX One, one of the Hawks' creditors, timely filed an adversary proceeding objecting to the Hawks' discharge.

Meanwhile, between December 11, 2013, and July 14, 2014, the Hawks withdrew all of the funds from the IRA and used most of those funds to pay for

living and other expenses. They never deposited the funds into another retirement account. When Res-TX One deposed Mr. Hawk in November 2014, he stated that approximately $30,000 of the liquidated IRA funds remained in his possession and that the funds were "in a shoebox." The Trustee first learned about the liquidated IRA funds from Mr. Hawk's deposition and subsequently demanded that the Hawks give the funds to the estate. After the Hawks refused, the Trustee filed a motion with the bankruptcy court seeking to compel the Hawks to turn over the funds.

Following an evidentiary hearing, the bankruptcy court ordered the Hawks to turn over the funds that were withdrawn from the IRA ($133,434.64 in total). The bankruptcy court concluded that the funds "lost their exempt status" under Texas law because the Hawks "did not roll them over to another individual retirement account within 60 days." The Hawks appealed to the district court, which affirmed the bankruptcy court's decision. This appeal followed.

## II. STANDARD OF REVIEW

As a "second review court," "[o]ur review is properly focused on the actions of the bankruptcy court." *In re Age Ref., Inc.*, 801 F.3d 530, 538 (5th Cir. 2015) (quoting *In re T–H New Orleans Ltd. P'ship*, 116 F.3d 790, 796 (5th Cir. 1997)). "We apply the same standard of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Pratt*, 524 F.3d 580, 584 (5th Cir. 2008). The "[d]etermination [of] whether an exemption from the bankruptcy estate exists is a question of law, which we review *de novo*." *In re Zibman*, 268 F.3d 298, 301 (5th Cir. 2001). "Although we may 'benefit from the district court's analysis of the issues presented, the amount of persuasive weight, if any, to be accorded the district court's conclusions is entirely subject to our discretion.'" *In re Age Ref.*, 801 F.3d at 538 (quoting *In re CPDC, Inc.*, 337 F.3d 436, 441 (5th Cir. 2003)).

No. 16-20641

## III. DISCUSSION

Under 11 U.S.C. § 541(a), the commencement of a bankruptcy case creates a bankruptcy estate comprising, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." The debtor may then remove certain types of property from the estate by electing to take advantage of the exemptions described in federal or state law. 11 U.S.C. § 522(b). "An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308 (1991). To claim exemptions, the debtor must file a list of property claimed as exempt on the schedule of assets. 11 U.S.C. § 522(*l*); FED. R. BANKR. P. 4003(a). A party in interest may then "file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors . . . or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." FED. R. BANKR. P. 4003(b)(1). "Unless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(*l*). "Anything properly exempted passes through bankruptcy; the rest goes to the creditors." *Payne v. Wood*, 775 F.2d 202, 204 (7th Cir. 1985).

This court has not previously addressed whether a debtor who withdraws funds from a retirement account and does not deposit the funds into another retirement account within sixty days loses the exemption pursuant to Texas law. However, the parties direct us to this court's case law regarding Texas homesteads. Indeed, there are clear parallels between the Texas statutes governing retirement accounts and those governing homesteads. Texas Property Code § 42.0021(a) states:

> [A] person's right to the assets held in . . . an individual retirement account . . . is exempt from attachment, execution, and seizure for the satisfaction of debts to the extent the . . . account is exempt from federal income tax, or to the extent federal income tax on the

person's interest is deferred until actual payment of benefits to the person . . . .

TEX. PROP. CODE § 42.0021(a). Section 42.0021(c) in turn provides that amounts distributed from an exempt retirement account "are not subject to seizure for a creditor's claim for 60 days after the date of distribution if the amounts qualify as a nontaxable rollover contribution." TEX. PROP. CODE § 42.0021(c). Similarly, Texas Property Code § 41.001(a) indicates that a homestead is "exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property." TEX. PROP. CODE § 41.001(a). Section 41.001(c) explains that the "proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale." TEX. PROP CODE § 41.001(c).

## A.     The Snapshot Rule

To understand this court's case law on Texas homesteads, it is helpful to first provide some background on the so-called snapshot rule. In *White v. Stump*, a debtor filed for bankruptcy, and his wife later sought a homestead exemption for the land where the debtor and his family resided. 266 U.S. 310, 310–11 (1924). The Supreme Court noted that "[t]he laws of the state of Idaho, where the land is situate, provide for a homestead exemption, but only where a declaration that the land is both occupied and claimed as a homestead is made and filed." *Id.* at 311. State law provided that until the landowner filed such a declaration, "the land is subject to execution and attachment like other land; and where a levy is affected while the land is in that condition the subsequent making and filing of a declaration neither avoids the levy nor prevents a sale under it." *Id.* The Supreme Court explained that "the state laws existing when the petition is filed [are] the measure of the right to exemptions." *Id.* at 312. Moreover, the date of filing is the point at which "the status and rights of the bankrupt, the creditors and the trustee . . . are fixed." *Id.* at 313.

Thus, the debtor was not entitled to a homestead exemption because the land "was subject to levy and sale" under state law when the debtor filed his bankruptcy petition. *Id.* at 314. This approach of looking to the state law in effect at the time of filing came to be known as the "snapshot" rule. *See In re Zibman*, 268 F.3d at 303.

Two decades later, the Supreme Court expanded the snapshot rule in *Myers v. Matley*, 318 U.S. 622, 628 (1943). The debtor in that case consented to an involuntary bankruptcy petition filed against him. *Id.* at 623. A month later, the debtor's wife filed a declaration with a Nevada county recorder claiming a tract of land listed in the debtor's bankruptcy schedules as a homestead and then filed a petition with the bankruptcy court claiming the land as exempt. *Id.* at 623–24. In contrast to the Idaho state law applicable in *White*, however, Nevada law provided that a debtor was entitled to an exemption so long as a homestead declaration was filed "at any time before actual sale under execution." *Id.* at 626–27. The Supreme Court explained that "under the law of Nevada, the right to make and record the necessary declaration of homestead existed in the bankrupt at the date of filing the petition as it would have existed in case a levy had been made upon the property." *Id.* at 628. "The assertion of that right before actual sale in accordance with State law did not change the relative status of the claimant and the trustee subsequent to the filing of the petition." *Id.* Thus, the Supreme Court concluded that the debtor's spouse was entitled to the homestead exemption. *Id.*

## B.    Fifth Circuit Homestead Precedent

This court has applied the snapshot rule in two distinct types of bankruptcy proceedings: Chapter 7 and Chapter 13 cases. *See In re Zibman*, 268 F.3d at 303–04 (Chapter 7 case); *In re Frost*, 744 F.3d 384, 386–89 (5th Cir. 2014) (Chapter 13 case). "Chapter 7 allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's

assets. When a debtor files a Chapter 7 petition, his assets, with specified exemptions, are immediately transferred to a bankruptcy estate." *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015). The trustee then sells the property of the estate and distributes the proceeds to the debtor's creditors. 11 U.S.C. §§ 704(a)(1), 726. "Crucially, however, a Chapter 7 estate does not include the wages a debtor earns or the assets he acquires after the bankruptcy filing." *Harris*, 135 S. Ct. at 1835. Though "a Chapter 7 debtor must forfeit virtually all his prepetition property, he is able to make a 'fresh start' by shielding from creditors his postpetition earnings and acquisitions." *Id.*

"Chapter 13 works differently. A wholly voluntary alternative to Chapter 7, Chapter 13 allows a debtor to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three- to five-year period." *Id.*; *see* 11 U.S.C. §§ 1321, 1322, 1325. Pursuant to 11 U.S.C. § 1306(a), "the Chapter 13 estate from which creditors may be paid includes both the debtor's property at the time of his bankruptcy petition, and any wages and property acquired after filing." *Harris*, 135 S. Ct. at 1835. We will discuss our Chapter 7 and Chapter 13 precedents in order.

### 1. *Chapter 7:* In re Zibman

In *Zibman*, the debtors sold their Texas homestead roughly two months before filing for Chapter 7 bankruptcy; they did not reinvest the sale proceeds in another homestead within six months of the sale. 268 F.3d at 300–01. We observed that under *Myers* and *White*, "the law and facts existing on the date of filing the bankruptcy petition determine the existence of available exemptions, but . . . it is the *entire* state law applicable on the filing date that is determinative." *Id.* at 304. Although the debtors filed the bankruptcy petition before the six-month exemption period had ended, "'freezing' the exemption for the proceeds simply because it was in effect at the date the petition was filed, [would] effectively read the 6–month limitation out of the

statute, and transform[] an explicitly limited exemption into a permanent one." *Id.* Furthermore, the intent of "the proceeds exemption statute was *solely* to allow the claimant to invest the proceeds in another homestead, *not to protect the proceeds, in and of themselves.*" *Id.* at 305 (quoting *In re England*, 975 F.2d 1168, 1174–75 (5th Cir. 1992)). Accordingly, we held that when the debtors "failed to reinvest the proceeds in another Texas homestead within the statutory time period, those proceeds lost their exemption, freeing the Trustee to reach the proceeds as part of the bankruptcy estate." *Id.* (footnote omitted).

### 2. *Chapter 13:* In re Frost

This court later applied *Zibman*'s reasoning to a Chapter 13 case in which a homestead was sold during the pendency of bankruptcy proceedings. *See In re Frost*, 744 F.3d 384, 387 (5th Cir. 2014). The debtor in *Frost* sold his Texas homestead after filing for Chapter 13 bankruptcy, but because he failed to reinvest the sale proceeds in another homestead within six months of the sale, we held that the proceeds were "removed from the protection of Texas bankruptcy law and no longer exempt from the estate." *Id.* at 385, 387.

Frost argued that *Zibman* was "distinguishable because it concerned proceeds obtained prior to filing bankruptcy, whereas he sold his homestead after petitioning for bankruptcy, at a time when the homestead had already been declared exempt from the estate." *Id.* at 387. Frost pointed out that 11 U.S.C. § 522(c) provides that "property exempted under this section is not liable *during or after* the case for any debt of the debtor that arose . . . before the commencement of the case." *Id.* (quoting 11 U.S.C. § 522(c)). He also suggested "that all bankruptcy exemptions are fixed at the time of the bankruptcy petition and do not later lose their exempt status." *Id.* at 386. Thus, Frost argued that "while the proceeds in *Zibman* were already temporarily exempted at the time of filing, the homestead was a permanent exemption and placed forever outside the estate." *Id.* at 388.

Responding to Frost's arguments, we emphasized that an "essential element of the exemption must continue in effect even during the pendency of the bankruptcy case." *Id.* (quoting *In re Zibman*, 268 F.3d at 301). Therefore, "a change in the character of the property that eliminates an element required for the exemption voids the exemption, even if the bankruptcy proceedings have already begun." *Id.* We explained:

> Adopting Frost's argument would require rejecting this court's determination in *Zibman* that § 522(c) does not prevent exempt property from losing its exempt status. If § 522(c) requires strict enforcement of the "snapshot rule" such that property exempted at the moment of filing can never be liable—regardless of restrictions placed on that exemption by state law or a change in the essential character of the property—then the proceeds from the sale in *Zibman* would have been exempted indefinitely, despite the six month limitation on that exception.

*Id.* at 389. When Frost sold his homestead, his "interest in his homestead changed from an unconditionally exempted interest in the real property itself to a conditionally exempted interest in the monetized proceeds from the sale of that property." *Id.* The "conditional exemption" that applied to the newly acquired sale proceeds "expired" when Frost failed to reinvest them in another homestead within six months. *Id.* Thus, we concluded that "Frost lost his right to withhold the sale proceeds from the estate." *Id.*

## C.   *Frost*'s Applicability to Chapter 7 Cases

*Frost* relied heavily on principles from *Zibman*, a Chapter 7 case. Nevertheless, the Hawks contend that *Frost* does not apply to their Chapter 7 case because *Frost* was a Chapter 13 proceeding. The Hawks note that the bankruptcy estate in a Chapter 13 case includes property "the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1306(a)(1). They contend that our decision in *Frost* effectively brought "proceeds that became nonexempt after the expiration of

the time-limited exemption back into the estate," which was permissible under § 1306(a)(1) because the proceeds constituted a new property interest Frost acquired after the commencement of the case. Because Chapter 7 does not contain a provision like § 1306(a)(1), the Hawks reason that an unconditionally exempted property interest that is subsequently transformed into a new nonexempt property interest remains excluded from a Chapter 7 bankruptcy estate. We agree.

As an initial matter, we note that the Trustee in this case did not object to the Hawks' IRA exemption until well after the time for objections passed. This timing is significant in the Chapter 7 context. As noted above, 11 U.S.C. § 522(*l*) provides that "[u]nless a party in interest objects, the property claimed as exempt on [the schedules] is exempt." Federal Rule of Bankruptcy Procedure 4003(b) also indicates that parties in interest must generally object to claimed exemptions within thirty days after the creditors' meeting.

In *Taylor v. Freeland & Kronz*, the Supreme Court held that a party in interest in a Chapter 7 case cannot "contest the validity of an exemption after the 30-day period," even if "the debtor had no colorable basis for claiming the exemption." 503 U.S. 638, 639, 643–44 (1992); *see also In re Davis*, 170 F.3d 475, 478 (5th Cir. 1999) ("If the exemptions are not objected to, the property becomes exempt and unavailable to be levied on by pre-petition creditors or managed by the trustee."). The trustee in *Taylor* argued that such a strict interpretation of  § 522(*l*) and Rule 4003(b) would "lead debtors to claim property exempt on the chance that the trustee and creditors, for whatever reason, will fail to object to the claimed exemption on time." 503 U.S. at 644. Yet the Supreme Court noted that "[d]ebtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings. These provisions may limit bad-faith claims of exemptions by debtors." *Id.* (citations omitted).

No. 16-20641

In light of the Supreme Court's decision in *Taylor*, it is somewhat difficult to understand how proceeds from the sale of the homestead in *Frost* could be brought into the bankruptcy estate "at a time when the homestead had already been declared exempt from the estate." *Frost*, 744 F.3d at 387. However, as the Hawks suggest, *Frost* makes sense in the context of a Chapter 13 case. We stressed that it was "the land itself—not its monetary value—that [was] protected under Texas law and 'exempted under [§ 522].'" *Id.* at 391 (quoting 11 U.S.C. § 522(c)). "Frost's homestead was exempted from the estate . . . by virtue of its character as a homestead." *Id.* at 387. But when Frost sold the homestead, his property interest "changed from an unconditionally exempted interest in the real property itself to a conditionally exempted interest in the monetized proceeds from the sale of that property." *Id.* at 389. In other words, Frost obtained a new conditionally exempted property interest (the proceeds) when he sold his homestead. And in a Chapter 13 case, a new property interest "the debtor acquires after the commencement of the case" becomes part of the estate under § 1306(a)(1).

Notably, in *Frost*, the bankruptcy court ordered the proceeds to be returned to the estate pursuant to § 1306(a)(1). The bankruptcy court noted that new property the debtor acquires after filing for Chapter 13 bankruptcy "comes in during the pendency of the case and becomes property of the estate." Transcript of Confirmation Hearing at 9, *In re Frost*, No. 09-54674 (Bankr. W.D. Tex. Jan. 27, 2011). The bankruptcy court went on to explain:

> A [Chapter 7 case] would be a different situation. In a [Chapter 7 case], the property is the debtor's, it's exempted, it's gone, and if he decides to sell it after that, it's subject to only his postpetition creditors. But in a [Chapter 13 case], it's different. And, so, I think it's still subject to the Chapter 13 estate, if it's not reinvested.

*Id.* at 10–11. This reasoning is consistent with this court's assessment that Frost's property interest changed from an unconditionally exempted interest

11

in the real property to a conditionally exempted interest in the proceeds from the sale of his homestead. When Frost acquired the sale proceeds and did not reinvest them in another homestead within six months, this newly acquired property interest became part of the bankruptcy estate under § 1306(a)(1).

The situation is different in the Chapter 7 context. Section 1306(a)(1) is applicable only in Chapter 13 cases; no similar provision applies to Chapter 7 cases. Here, the Hawks filed for Chapter 7 bankruptcy and subsequently claimed an exemption for funds held in an IRA. No party in interest objected. The funds were unconditionally exempted because of their essential character as "assets held in . . . an individual retirement account." TEX. PROP. CODE § 42.0021(a); *see* 11 U.S.C. § 522(*l*). Moreover, the Trustee could not "contest the validity of [that] exemption after the 30-day period." *Taylor*, 503 U.S. at 639, 643–44. When the Hawks withdrew funds from the IRA, the Hawks' property interest changed from an interest in assets held in a retirement account to an interest in "[a]mounts distributed from a [retirement] account." *See* TEX. PROP. CODE § 42.0021(c). But because § 1306(a)(1) applies only in Chapter 13 cases and no similar provision applies in a Chapter 7 case, there was no means by which the Hawks' newly acquired property interest could become part of the Chapter 7 estate.

Lower courts have debated whether *Frost* applies in Chapter 7 cases. One bankruptcy court held that "*Frost*'s core holding is based on factually distinguishable underpinnings and, as such, is distinguishable in a chapter 7 where, such as here, the debtor sells a properly exempted homestead post-petition." *In re Montemayor*, 547 B.R. 684, 713 (Bankr. S.D. Tex. 2016). Other courts have held that *Frost* controls when a Chapter 7 debtor sells a homestead after filing for bankruptcy. *Lowe v. DeBerry*, No: 5:15-cv-1135, slip op. at 19 (W.D. Tex. Mar. 10, 2017); *In re Smith*, 514 B.R. 838, 850 (Bankr. S.D. Tex. 2014). In one such case, a district court noted that allowing a Chapter 7 debtor

to retain proceeds from a postpetition homestead sale that were not reinvested within six months would "produce inequitable results, particularly when Chapter 13 debtors in identical situations are not permitted to retain such proceeds." *DeBerry*, slip op. at 19.

But Chapter 7 cases and Chapter 13 cases are not meant to always yield the same results. Chapter 13 is a "wholly voluntary alternative to Chapter 7," which permits a debtor "to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts." *Harris*, 135 S. Ct. at 1835. By filing under Chapter 13, the debtor agrees that the property he acquires after filing for bankruptcy will become property of the bankruptcy estate under § 1306(a)(1). *Id.* On the other hand, "Chapter 7 allows a debtor to make a clean break from his financial past." *Harris*, 135 S. Ct. at 1835. A Chapter 7 debtor "is able to make a 'fresh start' by shielding from creditors his postpetition earnings and acquisitions." *Id.* It follows logically that a new property interest the debtor acquires after filing for bankruptcy becomes part of the estate in a Chapter 13 case but does not become part of the estate in a Chapter 7 case, even if the debtor acquires the new property interest by transforming a previously exempted asset into a nonexempt one.

Lower courts have also suggested that the approach we take today will "effectively read the [time] limitation out of the statute in Chapter 7 cases." *DeBerry*, slip op. at 19. But limitations on exemptions still apply to property interests debtors hold when they file for Chapter 7 bankruptcy. *See Zibman*, 268 F.3d at 304. For example, in *Zibman*, we noted that "'freezing' the exemption for the proceeds simply because it was in effect at the date the petition was filed, [would] effectively read the 6–month limitation out of the statute." *Id.* Therefore, we held that when the debtors "failed to reinvest the proceeds in another Texas homestead within the statutory time period, those proceeds lost their exemption." *Id.* at 305. Yet in that case, the debtors already

held *proceeds* when they filed for bankruptcy, and state law provided only a conditional exemption for those proceeds. If the debtors had still owned the *homestead* at the time of filing, their homestead would have been subject to an unconditional exemption under Texas law.

Likewise, if the Hawks held amounts recently distributed from their retirement account when they filed for bankruptcy, those funds would be subject to the applicable sixty-day limitation on the exemption. *See* TEX. PROP. CODE § 42.0021(c). The Trustee could have objected to the exemption if the liquidated funds were not rolled over into another retirement account within sixty days.[1] But the Trustee did not timely object to the claimed exemption, and under *Taylor*, the Trustee could not contest the exemption's validity after the time for objecting passed. 503 U.S. at 643–44. The property interest was "withdrawn from the estate" when the exemptions were allowed, *Owen*, 500 U.S. at 308, and there was no provision under which the Hawks' subsequently acquired interests in amounts distributed from the IRA could become part of the estate. Accordingly, we hold that the bankruptcy court erred in ordering the Hawks to turn over the liquidated funds to the Trustee.[2]

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the bankruptcy court's order requiring the Hawks to turn over the liquidated funds to the Trustee, and REMAND the case for further proceedings consistent with this opinion.

---

[1] In fact, it seems that at least some of the funds were withdrawn from the IRA before the Hawks filed for bankruptcy (as early as December 11, 2013).

[2] The Hawks also argue that the funds were permanently exempted because the Trustee first objected to the exemption after filing a report declaring that there were no assets for distribution and proposing to abandon all nonexempt assets. However, because we hold that the amounts distributed from the IRA could not become part of the bankruptcy estate after the exemptions had been allowed, we need not address the abandonment issue.