# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50315

United States Court of Appeals
Fifth Circuit

**FILED**
March 7, 2018

Lyle W. Cayce
Clerk

In the Matter of: CURTIS HAROLD DEBERRY

Debtor

JOHN PATRICK LOWE,

Appellee

v.

KATHY DEBERRY; CURTIS HAROLD DEBERRY; GOLDSTEIN, GOLDSTEIN & HILLEY; GERALD H. GOLDSTEIN; CYNTHIA E. ORR,

Appellants

Appeals from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, SOUTHWICK, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Curtis DeBerry filed for Chapter 7 bankruptcy, listing his San Antonio home as exempt under Texas law. No objections were filed to this claimed exemption. Seven months later the bankruptcy court granted DeBerry's motion for authorization to sell the home, and he sold it for $364,592.21. DeBerry did not reinvest those proceeds in another home. Instead he transferred the money to his wife and to the law firm Goldstein, Goldstein & Hilley for the benefit of two partners who represented him in a criminal

No. 17-50315

matter. We must decide whether the proceeds of a homestead sold after the filing of a petition for Chapter 7 bankruptcy remain exempt from the debtor's estate if they are not reinvested within the time frame required to invoke the proceeds rule of Texas homestead law.

The trustee thinks the proceeds are not exempt. He filed an adversary proceeding against the DeBerrys, the law firm, and the partners who received the funds (collectively "appellants") alleging that creditors are entitled to the money because it was not reinvested in a homestead within six months. The appellants moved to dismiss the adversary proceeding, arguing that the proceeds were exempt as of the time of filing. The bankruptcy court agreed and held that when a Chapter 7 debtor sells his exempted Texas homestead postpetition, the proceeds of the sale are likewise exempted. The district court reversed. This appeal follows.

After both parties filed their briefs, our court decided *Hawk v. Engelhart* (*In re Hawk*), 871 F.3d 287 (5th Cir. 2017). *Hawk* held that funds withdrawn from an exempted retirement account after the filing of a Chapter 7 bankruptcy do not lose their exempt status even if the money is not redeposited in a similar account within 60 days pursuant to Texas's proceeds rule. *Id.* at 296. The appellants now contend that *Hawk* controls this case. The trustee attempts to distinguish *Hawk* on the basis that it involved retirement savings rather than homesteads.[1]

---

[1] The trustee also contends that different treatment is warranted because DeBerry waived his right to discharge under Section 727 of the Bankruptcy Code. We fail to see why this should change the resolution of the exemption question. The analysis in *Hawk* and ours today does not turn on giving DeBerry a "fresh start"; it turns on the clear principles of Texas law providing an exemption for homesteads. The trustee also invokes the Bankruptcy Code's goal of treating creditors equally, as the lawyers received all the homestead proceeds. But the other creditors are no worse off than they would have been if DeBerry had kept his home. Exclusion of that asset from the estate is always the effect of the homestead exemption.

No. 17-50315

Upon filing a claim for bankruptcy, a debtor may remove certain property from the estate under federal or state law, thereby shielding it from creditors. *See* 11 U.S.C. § 522(b). A debtor must file a list of exempt property, and "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." *Id.* § 522(l). Under the Texas Property Code, homesteads are eligible for exemption from the bankruptcy estate. Two provisions of the homestead statute are relevant. The basic rule allows a home to be "exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property." TEX. PROP. CODE § 41.001(a). The "proceeds rule" provides that "proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale." *Id.* § 41.001(c). The proceeds rule was a late nineteenth century amendment to the homestead statute meant to "protect from garnishment the proceeds of a voluntary sale of the homestead for six months, thus giving a reasonable time in which to invest the proceeds in another home." *Gaddy v. First Nat'l Bank*, 283 S.W. 277, 280 (Tex. Civ. App.—Beaumont 1923, no writ). The "object of the proceeds exemption statute was *solely* to allow the claimant to invest the proceeds in another homestead." *In re England*, 975 F.2d 1168, 1174–75 (5th Cir. 1992) (chronicling the history of the statute). So the proceeds rule only offers relief if the funds from the sale of the homestead are used to purchase another house within the six-month period. *In re Zibman*, 268 F.3d 298, 301 (5th Cir. 2001); *England*, 975 F.2d at 1174–75.

There has been confusion about how the proceeds rule works in the bankruptcy realm. It expands the homestead exemption available in Chapter 7 cases by not requiring that the home be owned on the date of filing. If a debtor sells her homestead a month before declaring bankruptcy and then uses that money to buy a new residence three months later—perhaps because like many she needs the equity from her old house to be able to afford the new

3

No. 17-50315

house—then her creditors cannot reach the new homestead. *See Zibman*, 268 F.3d at 304–05; *England*, 975 F.2d at 1174. But if that debtor who sold the house prepetition does not use the proceeds to obtain a new homestead within six months, the funds become part of the estate. *Zibman*, 268 F.3d at 305.

Unlike the situations just described in which the homestead is sold before bankruptcy, this debtor does not need to invoke the proceeds rule because he owned the homestead at the time of filing. Instead, it is the trustee who seeks to use the proceeds rule. He is trying to transform the rule from one that extends the homestead exemption to some situations when the home is not owned on the filing date into one that limits the homestead exemption even when the debtor owns the home on the filing date.

We recently rejected the same argument in the context of exemptions for retirement accounts. *See Hawk*, 871 F.3d at 295–96. Those Texas statutes, which we noted have "clear parallels" to those governing homestead exemptions, maintain exempt status for money withdrawn from retirement accounts so long as it is reinvested in such accounts within 60 days (the shorter window reflecting that it is usually less time consuming to transfer funds between liquid assets than real estate). *Id.* at 291; *see* TEX. PROP. CODE § 42.0021(a), (c) (noting that "a person's right to the assets held in . . . an individual retirement account . . . is exempt from attachment, execution, and seizure for the satisfaction of debts" and that funds extracted from an exempt retirement account "are not subject to seizure for a creditor's claim for 60 days after the date of distribution"). In holding that the exemption for retirement accounts is "unconditionally exempted" at the time the Chapter 7 petition is filed, we relied on bankruptcy's snapshot rule. *Hawk*, 871 F.3d at 291–92, 295. In addition to reflecting the nature of the proceeds rule as one that expands rather than limits the scope of exemptions, this holding prevents the creation of a "system of quasi-exempt property [in which] property would never be fully

4

exempt until a case was either closed or converted." *In re Fonke*, 321 B.R. 199, 208 n.11 (Bankr. S.D. Tex. 2005). This case illustrates the uncertainty that the trustee's position would inject into the large number of Chapter 7 cases that bankruptcy courts confront. The home was not sold until seven months into the bankruptcy, which means that under the trustee's approach the status of the exemption could not be determined until the thirteenth month when the reinvestment period expires. The trustee's position would also lead to "arbitrary" results as protection for the proceeds of postpetition homestead sales would depend on the aggressiveness of the trustee in closing a case. Brief for Christopher G. Bradley et al. as Amici Curiae Supporting Appellants at 4, 12–14.

We see no reason why *Hawk*'s analysis should not also apply to Texas's homestead exemption, which has much deeper roots than the protections afforded retirement accounts. *See In re Perry*, 345 F.3d 303, 316 (5th Cir. 2003) ("Homesteads are favorites of the law, and are liberally construed by Texas courts." (citing *Whiteman v. Burkey*, 282 S.W. 788, 788–89 (Tex. 1926))). Indeed, *Hawk* relied heavily on homestead caselaw in holding that "an unconditionally exempted property interest that is subsequently transformed into a new nonexempt property interest remains excluded from a Chapter 7 bankruptcy estate." 871 F.3d at 294. And it persuasively distinguished two homestead cases the trustee invokes here. The first is *Zibman*, which we have already alluded to for the principle that when a debtor fails to reinvest in a new home the sale proceeds of a homestead sold *before* the filing of a Chapter 7 bankruptcy petition, those proceeds lose their exemption and are reachable by creditors. 268 F.3d at 305. Because the *Zibman* debtor had sold the homestead prepetition, the proceeds were only conditionally exempted subject to the reinvestment Texas requires. In contrast, this homestead was owned on

5

No. 17-50315

the date of DeBerry's filing and thus was "subject to an unconditional exemption under Texas law." *Hawk*, 871 F.3d at 296.

The other case the trustee cites, *In re Frost*, is at least factually similar to this one in terms of the home being sold after the commencement of the bankruptcy.  744 F.3d 384, 389 (5th Cir. 2014).  But *Frost* was a Chapter 13 case, which turns out to be a key distinction.  As *Hawk* explained, Chapter 13 contains a provision mandating that all "property 'the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted'" becomes part of the Chapter 13 estate.  871 F.3d at 293–94 (quoting 11 U.S.C. § 1306(a)(1)).  Chapter 7 contains no similar provision.  *Hawk* explains why the two chapters treat postpetition transactions differently.  *See id.* at 295–96.

Just as the retirement account in *Hawk* was exempt because it was owned on the date the Chapter 7 petition was filed, so too is the homestead exempt because it was owned at the commencement of DeBerry's bankruptcy.

\*\*\*

We REVERSE the district court's judgment and REINSTATE the order of the bankruptcy court dismissing the adversary proceeding.

6